The next case is Griffin vs. Griffin and for the appellant is Schneiderhine and Ms. Ogar for the appellee. Judge Kinect is on this panel but he's ill today so he will be listening to the oral arguments tomorrow when they're posted online. So he will be participating. You may proceed. May it please the court, this appeal involves a single issue on a marriage dissolution case. That is whether the trial court erred by considering marital misconduct and awarding the wife permanent maintenance. That is the only issue that we are appealing here. The trial in the case was admittedly unconventional. There was no testimony by anyone and I know that that is a big issue in this case right now. On the date of trial both of the parties agreed that each of the individual parties exhibits would be admitted without objection and each side argued their legal position to the court. And I think there's mention of stipulations and a lot of these quote unquote stipulations were actually in the context of a legal argument during those proceedings. There was really no need for testimony in this case because there were no factual disputes. There were no factual disputes because we agreed, we stipulated that Mr. Griffin had been terminated from his position at State Farm prior to his wife filing for dissolution of marriage. We agreed that the financial affidavit submitted by the parties at trial accurately reflected their individual financial positions. We acknowledged that the parties financial position was precarious. That the marital estate was insolvent, Mr. Griffin was going to need to file bankruptcy, and the marital residence had no equity. Those were undisputed and I believe those are still undisputed today. Those facts are undisputed. And we acknowledged, and you can see this in the judge's docket entries, that the primary point of contention was the payment of debt. And in particular it was the payment on the second mortgage, which not coincidentally was $620, which is the amount of the maintenance award in this case. There were no factual disputes at trial. Well, counsel, if I could interrupt you for a moment. This is subject to the manifest weight standard, right? I'm sorry. Oh, manifest weight of the evidence. Right. You agree with that. And so we need to look at the evidence. And as the appellant, you're the one that has to show us where in the evidence the trial court's judgment was flawed. As Ms. Ogar pointed out in her brief, there's no report of proceedings below or a bystander's report. The trial court's judgment clearly indicates, and I'm just going to read from the judgment of March 11, 2013, this court having heard the stipulation as to the testimony of the petitioner and the respondent, thus indicating that there was an oral stipulation of some sort presented. In the absence of that in the appellate record, how can we justifiably rule that the trial court's judgment was against the manifest weight? Again, we're not arguing the factors on maintenance. We're arguing he considered one factor in particular inappropriately, and that's the misconduct of Mr. Griffin. How do we know that the trial court considered that factor or the manner in which the trial court considered that factor or the other factors that the trial court might have considered without a full report of proceedings? The trial court states it in his order. The very first paragraph of the trial court's order states, the linchpin event in the financial crisis which occasions the court's consideration of the disputed issues in this case was the respondent's termination of employment at State Farm. The very first paragraph the judge states that was the issue before the court was, was the respondent terminated, was it his fault, and if it was his fault the judge goes on and says, then I should impute income to him and he should be obliged to pay certain debts and or maintenance. It's clear from that first paragraph that whether or not Mr. Griffin was at fault when he was terminated for State Farm was a primary consideration that this judge used in determining maintenance. And that is the one consideration that the statute says you can't use. You can't use marital misconduct in determining whether someone should pay maintenance. Well, is termination of his employment the same as marital misconduct? Our position is yes. It's something that he did during the marriage that he, that obviously he's being faulted for. Yes, but to me marital misconduct is misconduct towards the other spouse. For instance, having an affair. Correct. That's marital misconduct. The way that the judge's order is written, it is faulting Mr. Griffin for the financial crisis that occurred. Well, what if instead of having lost his job, what if he wasted the marital estate by a reason of drug abuse or gambling? That would also be considered marital misconduct, I would think. And anything that is morally objectionable would be considered misconduct against the marital estate. Now, there may be dissipation claims that someone could come forward with in those contexts. And even in the context of an affair, if somebody uses marital resources to engage in things that are not helpful to the marital estate. But I would suggest that misconduct can't be used to determine whether a maintenance award is appropriate. The statute states. I mean, it doesn't limit that to extramarital affairs. It says marital misconduct. And Mr. Griffin was definitely faulted. I mean, there's a moral judgment in this order that it was his fault that he was fired. And it predated the dissolution. It's his fault he was fired. It did cause financial distress in the marital situation. It did cause some financial problems. And that's what the judge's order talks about. Do you have any case authority that you can point to that would support this proposition that any conduct on the part of the husband here that occurred during the course of the marriage constitutes marital misconduct per the statute? Any kind, no. I would agree that most of it is focused on extramarital type of conduct. But the statute is not limited to extramarital affairs. It says misconduct. You shouldn't consider the misconduct of the parties in determining maintenance obligations. But I also want to address the record issue. Because I do have a case that I think is helpful here, and that's Milnes v. Hunt, which was actually cited by the appellate in her case. Interestingly, in that case, there was no transcript or bystander's report. And the appellate court still reversed the trial court, relying on the factual basis as it was stated in the trial court's order. And that's what we're asking the court to do here. We're asking the court to look at the order, which was very specific. Which case is that? Milnes, M-I-L-N-E-S v. Hunt, 311 Illinois App 3D 977. The site again? 311 Illinois App 3D 977. And it was cited in the appellate's brief. That was a contract case, and it had to do with the statute of limitations. And the appellate court did end up reversing the trial court based on the facts as they were stated in the trial court's order. And I believe there's enough just in the order here, in Judge Rainer's order, to suggest his analysis was flawed. But I would also suggest one trial exhibit in particular should be considered, and that would be Ms. Griffin's financial affidavit. Which was submitted by the petitioner in the trial court without objection. And the reason that that exhibit is important is because in their brief, the appellate attempts to discredit that affidavit and suggests that the petitioner's income was actually reduced in 2012. Yet the affidavit that was submitted at trial, that was signed and sworn to just eight days before trial, shows that the income of the petitioner actually exceeded the respondent's income at the time by a considerable amount. The other cases relied upon by the appellate to support the contention regarding the record are distinguishable because those are cases where there was testimony that was unavailable to the reviewing court. Neither party testified in this case. That the trial exhibits were basically what was submitted for consideration. And counsel, in regards to the trial exhibits, is there anything in the record that indicates that the parties agreed that they should be admitted in terms of which exhibits? And is there any indication that the trial court actually admitted those exhibits into evidence? I looked at the docket entry. I think the fact that they're in the record suggests they were admitted. In my practice, if they're not admitted, they get returned. Well, certainly you can't rely on that because a party may wish to have an exhibit that wasn't admitted into evidence be maintained as part of the record for a subsequent appeal. So just because it's contained within the record doesn't necessarily mean it's an admitted exhibit. The exhibits that we're focusing on here today, one, the respondent's income is in the judge's order. Judge Raynard found specifically that the respondent made $49,000 a year when he worked at State Farm. So he imputed $49,000 to him. So we know from the trial court's order at trial he was making less. And the petitioner is the one that submitted her own financial affidavit. And I would suggest, I'm telling you, we didn't object to it. We don't have any objection to this court considering that. That was not our exhibit. That was the petitioner's exhibit. I think those are the two most important pieces of evidence in the record right now. And they're in the record. The trial court's order is in the record.  And they suggest a discrepancy, a significant discrepancy in income here. The petitioner was making $20,000 a year more than the respondent at the time of trial. Without the imputation of income. Now if you look at the imputation of income, they were roughly equal. And you can get that from the trial court's order and from the petitioner's own financial affidavit, which was very fresh at the time of trial. Eight days before trial. I think the most frustrating part about this case, as you probably know, in McLean County there's no recording system. And as far as family law, there's rarely court reporters present. The fact that we continue to have to deal with the false perception that there was testimony presented in this case, I think is the most frustrating part. Because honestly, I did not realize there was any factual dispute in this case until I received the appellee's brief. And that was the original brief that suggested there was testimony. The amended brief now talks about stipulations, but again, it references testimony by stipulations. And we know neither party testified. In particular, page one in the fourth paragraph, again the appellee states that she testified by stipulation. As to her 2012 income changing. Well, she submitted a financial affidavit, which was signed eight days before trial, that showed her income. And to suggest in a brief that there was testimony that her income changed, I think is disingenuous and just false. That's not what happened. And yes, there is a record of what her income is, but there's no record of her testimony because it didn't happen. The only evidence of her testimony was the financial affidavit. And yes, I did not realize there was a factual dispute on that until I received the appellee's brief. I was relying on the fact that she had submitted a financial affidavit. And I was relying on that. And I think I was entitled to rely on petitioner's own exhibit and own statement as to what her income was. But we get the appellee's brief and now she's challenging her own exhibit. There's also challenges to how much the respondent's income was at State Farm. We have the district court's order that says he found specifically the respondent was making $49,000 at his job at State Farm. So the suggestion that he was making a lot more has been decided. It's in the district court's order. Under Millness, you can consider that fact in this appeal. And then even though we have an acknowledgment by the appellee that there was no testimony, she goes on to talk about the demeanor of the parties and credibility determinations. There couldn't have been credibility determinations. There was no testimony. In fact, at one point in her brief she talks about cross stipulations. I have no idea what that means. I have no idea what that is. I don't know what she's talking about. So had I had the benefit of appellee's brief, certainly I would have filed a bystander's report. But at the time of this appeal, we had a very specific district court's order. We didn't dispute the factual findings of the district court. We didn't dispute the exhibits that were in the record. It wasn't until we got the appellee's brief and we noticed, oh my goodness, where did this come from? What is all this talk about testimony that we realized maybe we're dealing with an alleged factual dispute? But I would submit at this point the alleged factual disputes that are in appellee's brief are not properly before the court. The alleged dispute as to the petitioner's income, she submitted the financial affidavit, the alleged dispute about the respondent's income, that's in the trial court's order. And those are the two very important considerations here. I think it's very clear when you read the trial court's order, he states in that first sentence, the linchpin is that Mr. Griffin was terminated because he did something inappropriate. It's clear from the order, that's why he entered the maintenance award in this case. And I would also suggest that it results in a very inequitable situation. If you go to the last paragraph where he does, paragraph 8, where he does say, he does talk about the maintenance situation. He states the most significant issue that he considered was the respondent's ability to pay, but he based that ability to pay on the imputation of the income from State Farm, which he lost when he was terminated. It's clear in this case that the trial court felt that Mr. Griffin should be held morally responsible for the misconduct of him being terminated from his State Farm employment, and that was improper under the statute. Thank you. Okay, well we do have a problem with the record, and I think it's a significant problem. Counsel keeps saying there was no testimony, there was no testimony. And then she says, well look at the face of Judge Reinhardt's order. The face of Judge Reinhardt's order says there was testimony. It was not testimony in the traditional sense, but it was testimony by virtue of stipulation. And it was very organized in terms of how we did it. If called to testify, petitioner would say, ABC, then she could get up and say, this is what the cross would look like. If called to testify, and so that's how we went back and forth, presenting to the court in a very structured manner. It is not to say that it was 100% agreed upon, but rather, this is what each party would say. And so when I make references about there being a transcript or a need for a bystanders report, we still needed to give this appellate court what it was we told the judge the evidence was going to be. Because both of us, and there's no way that she can say that's not what we did. We did it by stipulation. If called to testify, this is what the testimony would be. And then we were able. She says it's done in an argument form. I don't necessarily agree that it was done in an argument form. It may have been one, I honestly don't recall if it was one continuous, but I know that we took the effort to say, this is what it says. We referenced exhibits, we referenced what our clients would say about those exhibits. And the fact that it was done in that manner makes it all that much easier to have done a bystanders report. If she complains about, okay, well McLean County doesn't have a recording system, all you have to do is ask for a court reporter, number one. Number two, a bystanders report in this particular case would have been quite easy to accomplish. And so I do think that these are things, and I think that there are disagreements we have. And her coming back and forth and saying, well, look at Judge Reiner's order on the face of this order, just rely on this, but don't pay attention to the fact that he's saying there was testimony. Additionally, I submit that you guys have the docket entries. You have how many times we came to court, when we came to court. And if you look at that, you will note that Mr. Griffin represented himself for a significant portion of this case. He came, he represented himself. Why is that significant? That is significant because, again, Judge Reiner had the opportunity to see him, to listen to him, to talk to him. Was it all done necessarily in that one instance? No, it was not. But Judge Reiner did have the opportunity to look, to talk to directly, probably even more so than most trial judges get, in terms of not having someone kind of leading the testimony, but observing that. So I do think the record is significant. I do believe that there was testimony. It was testimony by stipulation, but nonetheless, it was testimony. We did say to the judge, look at this exhibit. If called to testify, my client would say about this exhibit. So, for example, and I think there are numerous exhibits that we could question. She points to a W-2 from the appellant and says this is what his earnings were. Well, if you go to the other exhibits, you will note that he was terminated November of 2011, 2012. I forget, it's in my brief. But that wasn't even a full W-2. That W-2 would not have reflected a full income for a year. All of that was something that we talked about. My client, through me, by saying if called to testify, this is my client's affidavit, she would testify that this is what the current situation is with her employment. And that is significant. And then if we had a disagreement, that's something that Judge Reiner could have settled for us. Instead of us sitting here today saying, well, did we say that Barney's affidavit was going to be good or bad? Instead of having that argument here in front of you, that is something that through a bystander's report, if there was a disagreement, Judge Reiner, who did hear it, who did listen to us, who did take notes, could have clarified and reflected. So a bystander's report, I think, was necessary. I do think it is incumbent upon the appellant to take this case. And this isn't like a simple contract case and is there a statute of limitations issue. This is a case which required the judge to consider numerous things with regard to these exhibits and where we are. Now, if we are going to say, okay, well, fine, let's forget about the fact that we, by stipulation, presented testimony. And again, I understand that that is somewhat unusual. We were pressed for time. We had been working on some other issues. So that is what we elected to do. But that doesn't restrict us from saying, oh, there was no testimony at all. Or, oh, there was no explanation about these exhibits. There was nothing presented with regard. We just gave the court these exhibits and argued. That's not what happened. And I think that we needed either a bystander's report or some type of stipulation with regard to what we said the testimony would have been had the parties been present. And again, I do think the court was in a position to observe the parties on a day-to-day basis. But when we appeared in court, and I would submit that you all can look at the docket entry as to the times that we had come to court. Now, the secondary thing is, did Judge Reiner make a mistake and improperly consider marital misconduct? And I submit to you that he did not. I argued. It was my position that by his own misconduct he lost his job. Yes. But that is not an improper consideration of misconduct. I understand the statute says the court shall not consider misconduct during the marriage. However, the court can, and in prior cases has considered whether or not conduct has led to you losing your job, which then results in the imputation of income. And there is cases there in my brief, there's a long line, that indicate that if you, it comes up often in child support cases. You can't go, basically tell your boss off, lose your job, and then say, gosh, I can't pay child support. That's where a lot of our imputing of income cases come from. But that is not to say that the judge could not impute income in this particular case. And I totally, completely disagree that Judge Reiner only considered that factor. In fact, if you are considering this case in its totality with the limited record you have before you, his ruling is very sustained by the record you have. What you don't have was the talk about the idea that he was going to file bankruptcy. What you don't have is necessarily a discussion of the list of debts. But what that judge knew was that he, again, we don't have the stipulated testimony, but that there was a likelihood of bankruptcy. And if there's a likelihood of bankruptcy, this court, I'm sorry, the trial court under this statute is required to consider keeping the minor children in the home. That's one of the factors. Another one of the factors is the future income of both parties, the custodial provision for the parties. All of that was considered by the court. Why is that significant? Because we do have an Exhibit 2 which talks about both the first and second mortgages of the house. In Judge Reiner's order, that first and second mortgage were placed upon the petitioner's money. Counsel, again, we don't necessarily have the record, but if we did in terms of what we stipulated, we would have stipulated they were underwater. That more money was owed on the house than it was worth. So it's not as if my client got something good. She got a liability. Had Judge Reiner said, look, and there was additional stipulated testimony regarding taking out of that second mortgage, who took out that second mortgage? Who took out that second mortgage? Who took out that second mortgage? It's not mere coincidence that the second mortgage is $619.01 a month and that Mr. Griffin's maintenance was $620 a month. Had Judge Reiner given him an obligation to assist in paying the liability, he would have, as we stipulated in the stipulated testimony, most certainly have filed bankruptcy, leaving my client and the minor children of the parties sitting there kind of holding the bag. So in terms of Judge Reiner not fully considering everything in this case and just looking and saying, wow, he's a bad guy. He's a bad guy. I think if the court were to look at the totality, certainly this court would determine that Judge Reiner's rationale, Judge Reiner's thought process was very thorough. It is certainly, when we talk about the standard of review, certainly nothing that you can call into question without a complete record, number one. And number two, without understanding, if you did understand the entire case, you would understand that he had thought about, I want to keep those children in their home. I want to keep them in their home. How do I do that? How do I accomplish that? And that is one of the factors under the Marriage and Dissolution Act, the right to, awarding the home or the right to live therein to the party having custody of the minor children. That is one of the factors, whether it's stated in his order or not, certainly one of the things I think he was looking for. And how did he accomplish that? If he gave a debt, the debt was going to be bankrupted and everybody would be out on the street again. You cannot discharge maintenance obligation in bankruptcy. So how do you get someone to pay a debt without saying pay this debt? I think it is a very well thought out opinion. I think it is an opinion that is sustained by what evidence you have before you. And certainly is something where he took into account the minor children's future income of both parties. And so it's not just did he behave badly and lose his job. Did he behave badly and take out a second mortgage which resulted in $619 being added to the marital residence obligation. It is a situation where he was trying, and I believe successfully and equitably distributed these obligations in a method that would make sense in your case. So I submit to you when you look at the standard of proof, I apologize, the standard of review, if you look at what Judge Reiner did, it is very much sustained. It is very well thought out. It handles issues that you are unaware of because we don't have a complete record. Issues of bankruptcy, issue of who took out the second mortgage, issues of what were the relative incomes of both parties, what did Mrs. Griffin say through me saying this is what she would have testified to. I agree she didn't take the stand, but there was an opportunity I think for the court to consider that. That is how we made the presentation of evidence. To suggest that we just handed the judge the financial documents and said that's it is ridiculous. Judge Reiner couldn't have made a decision if that is what the representation is, that we just gave him the documents and said nothing is in dispute so we are just going to argue. Because we did have to present some testimony to support that, to explain it, to talk about what these exhibits were. This wasn't just a situation where these were handed over and everybody said okay, have a good time trying to figure this out. Because there was more to the case than that. But just in closing, I would submit that that is exactly what appellant is asking you to do. To pretend that all we have I've got my exhibits there and you've got them in the record. But to take those and to say figure it out. And I was driving down here trying to think of what is the analogy. And the only analogy I can come up with is really it's a bit like hieroglyphics. Eventually people who investigated and read them and read them came up and said this is what the hieroglyphics say. But no one knows because we don't have any Egyptians who are capable of reading hieroglyphics. We went back and tried to figure out. We miss nuances, we miss things that maybe we have completely misunderstood what the Egyptians were trying to say and we're doing our best guesstimate. And I submit that this court should not be doing a guesstimate when looking at these exhibits. And I submit that this court should not be calling into question Judge Reiner's very reasonable order when you look at the totality of everything that was presented to him. So thank you. Thank you. Rebuttal please. I'm glad Ms. Ogar raised the bankruptcy issue because I agree 100% with her. That is why Judge Reiner did what he did. He made the maintenance exactly equal to the second mortgage so that my client could not seek the benefit of federal bankruptcy laws. That's exactly why he did it. I agree 100%. That's what happened. That's wrong. Principles of comedy would suggest he shouldn't have tried to usurp Mr. Griffin's federal rights in bankruptcy court. The second mortgage was a property issue. Do you make that argument? I didn't because it wasn't made in the record and honestly it's clear that's what he did. I agree with Ms. Ogar. She's raised it. I'm going to follow up on it. If you read his opinion and you see 620 for maintenance, 620 for the second mortgage, I know that's why he did it. That was an issue that we had argued. But he didn't state that. It's not like what he stated in the first paragraph where he said it's your fault. You guys are in this position so you're going to have to pay maintenance. You're going to have to pay the debt other than the mortgage. Again, we don't disagree with the facts in this case. I can't think of a single fact other than the representation in the brief that petitioner's income changed in 2012 that we dispute. We're not disputing the court. We're disputing that those facts support an award of maintenance. This is a property issue. Was there a likelihood that the house was going to be lost to foreclosure? Yes. But that likelihood existed before the dissolution was filed. This is a property issue. The emerital estate was insolvent. Judge Raynard ignored the fact that it was a property issue in an attempt to save the house for the wife and the children. But he ignored the respondent's right to have some income to survive off of in doing so. And I acknowledge, I agree 100% with Ms. Okar's argument that this was to avoid the bankruptcy loss. I am not I didn't raise the issues in my brief because, again, I was trying to go off the record that we had. If you look at the judge's order, he was talking about misconduct in his order. He was talking about imputing income. I want to talk about imputing income because it's interesting. The judge never went into the specific requirement for imputing income. You have to find that someone was trying to avoid a support obligation. When he was terminated, the dissolution petition had never been filed. There was no finding in that regard. There was no consideration of that. This is not an imputation case. This is not a maintenance case. This should have been a property issue. And the judge improperly treated it as a maintenance issue. Thank you. Thank you, counsel. We'll take this matter under advisement and stay in recess until the readiness of the next case.